# H. C. Comegys, Thos. Davis, William R. Williams, and S. M. Mayer, v. A. B. Russell, Appellant.

*Mines and mining—Coal lease—Royalty—Evidence—Question for jury.*

In 1887 R. made a coal lease to D. which provided for the payment of royalties every six months, and a forfeiture of the lease if royalties due remained unpaid for twelve months. On July 1, 1891, D. gave an option to plaintiffs to purchase his lease, one of the conditions being that they should test the character of veins upon the tract by boring down through them. On January 14, 1892, D. entered into an agreement in writing with the plaintiffs almost identical in terms with the agreement of July 1, 1891, except that the minimum amount of coal required to be mined each year was different. This agreement, although executed on January 14, 1892, was dated July 1, 1891. On April 25, 1892, after the boring had been done, plaintiffs notified D. that they accepted the lease signed on July 1, 1891. In July, 1893, plaintiffs offered to pay any royalties due. The lessor said there was nothing due, but if there were he would not take it from the plaintiffs. In September, 1893, the lessor re-entered for the nonpayment of royalties within twelve months after they had fallen due. There was some evidence that no royalties were due at the time the forfeiture was declared and the re-entry made. There was also evidence that the plaintiffs expended time and money on the property upon the faith of the alleged declarations of the defendants that no royalties were due. The evidence was conflicting as to whether the notice of April 5, 1892, referred to the lease signed on July 1, 1891, or to that signed on January 14, 1892. *Held*, that a verdict and judgment in favor of the plaintiffs in an action of ejectment should be sustained against the lessor.

Argued Feb. 21, 1898. Appeal, No. 74, Jan. T., 1897, by defendant, A. B. Russell, from judgment of C. P. Lackawanna Co., March T., 1894, No. 423, on verdict for plaintiffs. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Ejectment for coal under a tract of land in Scott township. Before PURDY, P, J., of the 22d judicial district, specially presiding.

Plaintiffs' testimony tended to prove that A. B. Russell, the defendant, knowing all about the terms of this lease from Davenport to Comegys and Davis, told Comegys in the month of February, 1892, that Joseph Davenport had paid his royalties to January 1, 1892; and that relying upon the statements made at that time, the plaintiffs expended considerable money in developing the property; that they sent Mr. E. H. Shurtleff on June 1, 1893, to pay to Russell any royalties which might be due, and that Russell then and there told him, that none was due, and if there was he would not accept it from plaintiff; that relying upon this declaration, these plaintiffs continued to devote some of their time to the enterprise in which they were jointly concerned, which they would not have done unless that declaration had been made; that no cause for forfeiture existed, there being no unpaid royalties on September 28, 1893; that the character and conduct of Davenport was such that these plaintiffs could at no time ascertain from him anything concerning the account between himself and Russell; that between September 18, 1893, the date of the decision in the equity case, and September 28, 1893, the date of the alleged re-entry, there was a fraudulent and secret agreement between Russell and Davenport, by which the former was to apparently resume possession, but in the interest of the latter, for the purpose of defeating the just claims of these plaintiffs; that these men, Russell and Davenport, by their appearance, manners and conduct, when upon the witness stand, and under oath, in the presence of the jury, plainly and clearly betrayed their common interest in the property, and such entire disregard for truth and decency of expression that no jury could fail to see and appreciate the absolute dishonesty of the defense.

Other facts appear by the former report of the case in 175 Pa: 166, and the charge of the court below in this case which was as follows:

The action in which you have been sworn is one of ejectment between H. C. Comegys, Thomas Davis, William R. Williams and S. M. Mayer v. A. B. Russell, to recover the possession of

property situated in the northern part of this county, containing about four hundred acres, more or less, the possession of which, at the time of the service of the writ in this case, was in the defendant here, and the right of possession to which is claimed by the plaintiffs. At the time this writ was issued in this case it was issued against three parties, A. B. Russell, this defendant, Joseph Davenport and Jerome Brittain. Subsequently Joseph Davenport and Jerome Brittain filed disclaimers in this case, disclaiming any ownership in the premises, and thereupon they are taken out of the case; this action proceeds against A. B. Russell only. To entitle the plaintiffs to recover in this case it must appear that the defendant, A. B. Russell, was in possession of the property at the time of the service of the writ, and it must further appear that the plaintiffs in this action were entitled to that possession. When we speak of the premises we do not mean for you to understand the entire fee, or the land itself, but the premises in question here, the coal strata, or the interests which Davenport acquired by virtue of his lease with Russell; those are the premises and that is the property which the plaintiffs in this action contend they were entitled to the possession of at the time this writ was issued.

It appears in evidence that Albert Russell acquired title to this tract of land on November 8, 1875, by deed from W. H. Sturdevant and wife, and that on December 31, 1887, for a sufficient consideration, Russell leased to Joseph Davenport, his successors and assigns, all the coal underlying this tract, with the right to enter upon the premises and to dig, mine and remove the same or any part thereof, Joseph Davenport agreeing to pay for the coal so taken from the land, for the first year ten cents per ton, for the second year fifteen cents per ton, and thereafter twenty cents per ton, until it was worked out, or so long as Davenport, his heirs and assigns, desired to work the mines. In this lease or agreement there was no stipulation that Davenport should mine or remove any specific quantity of coal in any one year. It seems to have been left entirely at his option as to the quantity, if any, which he should mine during any particular year or period. That lease provided that for coal retailed in small quantities two thousand pounds should constitute a ton, and if shipped by railroad or sold in large quantities twenty-two hundred and forty pounds were to con-

stitute a ton. By the terms of that agreement the payments were to be made by Davenport to Russell every six months, and the lease provided that in case of failure by Davenport to make payment of these royalties for the space of twelve months after they became due, he forfeited the lease, and Russell should have the right to enter upon and take possession of the premises without recourse to law. The rights which Davenport acquired under this lease might be transferred by him, if he so desired, to other parties; this lease was made to him, his heirs and assigns. Such transfer, however, by him would pass to his grantee or assigns only such title or rights as he, Davenport, had in the premises, and in the absence of any declarations or conduct on the part of Russell, which would operate as an estoppel against him, he could assert his right under the forfeiture clause against Davenport's assignee the same as he could against Davenport.

On July 1, 1891, Joseph Davenport entered into an agreement with H. C. Comegys and Thomas Davis, giving them, for the period of seven months, the privilege to bore and test the property, and the option within that time to elect to mine the coal, and if they did elect to mine the coal they should remove or pay for at least five hundred tons in each year; that is what is meant by the minimum spoken of here, that was the least quantity that they were required to pay for; whether they mined it or not, they were to pay for five hundred tons every year; they had the option to mine a greater quantity if they chose to do so.

On November 9 following the making of this agreement last spoken of, the time mentioned in that agreement, seven months, was extended three months, so that their option under this agreement would expire at the end of ten months instead of seven. This agreement was placed upon record January 12, 1892, that is the agreement of extension. On January 14, 1892 —two days after the agreement of extension, perhaps after the entire agreement, the extension clause and the agreement of July 1, 1891, were placed upon record—Davenport and wife entered into an agreement with Comegys and Davis, two of the plaintiffs here, the terms and language of which latter agreement, except as to the minimum amount of coal required to be mined each year, are almost identical with the agreement of

July 1, 1891.    This latter agreement is dated July 1, 1891, and provides substantially as follows: "That Joseph Davenport lets, leases and demises for the considerations hereinafter mentioned all the coal on and underlying lands described in a certain coal lease now recorded in the office for recording of deeds in and for the county of Lackawanna, in the city of Scranton, in deed book No. 57, page 337, etc., to the said H. C. Comegys and Thomas Davis, [this clause identifies the land as the same which was conveyed to Russell, and which was leased, the coal under which was leased to Davenport] to the same extent as said Joseph Davenport has the right to the same under the above described lease, for the sum of twenty-five cents per ton for all sizes above the size of pea coal, and the sum of ten cents per ton for pea coal as royalty or rent, and also ten cents per ton for smaller sizes than pea coal."

Then the lease provides that Comegys and Davis are to have the privilege of boring to ascertain the thickness of veins for a period of seven months from the execution of this lease, and this time was subsequently extended to ten months.    This lease provides that at the expiration of that time, seven months, afterwards extended to ten, the lease and all rights under it of Comegys and Davis should cease and determine and revert to Davenport unless Comegys and Davis elected to proceed to mine in a good and workmanlike manner all coal three feet thick and over.    Then the lease provides that in case Comegys and Davis, at the expiration of that time, elect to proceed under this lease they should pay to Joseph Davenport the royalties aforesaid on the respective sizes, etc., within the period of three months of the mining of the same.    There was a further provision in this lease that they should not hinder, Comegys and Davis should not hinder, the said Joseph Davenport from working said veins for the period of seven months.    Comegys and Davis, under this lease, agreed to ascertain by proper borings before the expiration of seven months the thickness of the veins on and under the land so as to be able to determine whether they would elect to mine and remove the coal therefrom.    The lease provided if they did elect to proceed within the time mentioned, then and in that case they were to pay for the coal mined in accordance with the stipulations which we have before stated.    It was further stipulated in this agreement that they

should commence mining of coal nineteen months after the date of the lease, and that they were to mine a minimum amount of ten thousand tons in every year. I stated to you before that they were at least to pay for that amount whether they mined it or not; the lease seems to require that they should mine that amount each year. In this lease it was provided that after beginning to mine the coal that Comegys and Davis might pay, or cause to be paid, to A. B. Russell such royalties as might be due him under Russell's lease to Davenport, returning or giving the surplus, if any, over to Davenport. This agreement was signed by the parties, witnessed and acknowledged. You will remember we said this agreement was made on January 14, 1892. It bears date July 1, 1891, the same as the former lease made and executed between the parties.

The plaintiffs in this case claim, and some testimony has been introduced by them for the purpose of showing, that it should be substituted for and stand in the place of the agreement made and signed July 1, 1891.

It appears that between the times of the making of these two papers, on November 21, 1891, H. C. Comegys and Thomas Davis, who at that time were the lessees in the paper executed July 1, 1891, entered into an agreement with W. R. Williams and S. M. Mayer by which they sold to Williams and Mayer an undivided one half of their holdings in the land, upon the condition that Williams and Mayer should bore and test the property on or before May 1, 1892, to ascertain the quantity and quality of the coal beneath the surface. This was between the making of the paper of July 1, 1891, and the one of January 14, 1892.

On February 1, 1892, Davenport and wife gave Comegys and Davis an option to purchase Davenport's interest in his lease from Russell, that is, to purchase it outright, for the sum of $20,000. Understand, gentlemen, that these parties already had an agreement by which Comegys and Davis had the right to mine the coal, if they chose to do so, paying certain royalties to Davenport. This agreement of February 1, 1892, gave Comegys and Davis the option to purchase Davenport's interest in the land outright for $20,000. This option was to expire on December 31, 1893.

On February 15, 1892, fifteen days after obtaining the option

of purchase from Davenport, they obtained from Russell an option to buy his title in two hundred acres of the premises within one year.   That agreement between them provided that any interest which Davenport might have in the premises was excepted and that the parties, Comegys and Davis, were to take whatever they did take from Russell subject to any rights which Davenport had in the premises.   So that on February 15, 1892, Comegys and Davis had an option to mine the property under a royalty, paying a royalty to Davenport; they also had the option to purchase Davenport's interest in the property absolutely, and they also had from Russell an option to purchase his interest in two hundred acres of the property for the sum of $150,000.

These papers, we think, were all valid papers, and we see nothing in any one of them that would operate to destroy the other.   Under Davenport's lease to Comegys and Davis he continued to mine coal from this property up to about the time Russell took possession in August or September, 1893.   There is some question about that date; my recollection is that it was in September, 1893, that Russell took possession.

By the terms of the agreement between Davenport and Comegys, that is, the agreement which was signed on January 14, 1892, which bore date July 1, 1891, they were to have seven months, which, subsequent to the time of the signing, was extended to ten months, for boring and testing the property, and at the expiration of that time their rights under the lease should cease unless they elected to proceed to mine and pay for the coal as stipulated in the agreement.   The plaintiffs claim that they did elect to proceed to mine the coal, and that they gave Davenport notice of such election on or about April 25, 1892.   This notice was in writing and was as follows: "Scranton, April 25, 1892.   Mr. Joseph Davenport.   Dear Sir: We, the undersigned, hereby notify you in accordance with the requirements of the lease signed by you July 1, 1891, leasing to us the tract of coal land known as the C. Weaver tract, that we accept said lease and elect to proceed to mine said tract of land in accordance with the requirements of said lease.   Respectfully, H. C. Comegys, Thomas Davis."

The defendant in this case contends that this notice cannot be construed as applying to the lease July 1, 1891, but which

was actually signed January 14, 1892, but that it applies to the other paper, or some other paper, presumably to the paper which was given in evidence by the defendant in this case dated July 1, 1891, and which it appears was signed July 1, 1891. [The plaintiffs claim under the lease dated July 1, 1891, but executed January 14, 1892; that is, they claim in this case and base their right to recover in this case upon that lease or agreement, and if they are entitled to recover in this action it must be by virtue of this lease which was signed on January 14, 1892, although dated July 1, 1891, and not upon the strength of any other lease or paper.

Now, gentlemen, with reference to this question we say to you that if the notice of April 25, 1892, which we have read to you, was designed to relate to the lease which was signed January 14, 1892, and both parties so understood it, then the election to mine under this lease, and the notice thereof, was sufficient. If, however, this notice was designed to relate to the other lease which was signed July 1, 1891, or any other paper or lease between the parties, or if Davenport understood by reason of the language of the notice that it related to this prior lease or to some other lease than the one signed January 14, 1892, then we think there is no sufficient evidence of an acceptance by Comegys and Davis of the option in the lease of January 14, 1892, to bind Davenport; and if Davenport was not bound, Russell would not be bound.

The first question then is, what was the intent and understanding of the parties respecting this notice? That is a question for you to determine, gentlemen, under all the testimony bearing upon it. In determining what that understanding was and just what weight should be given to this notice you should take into consideration the similarity of the two leases, their phraseology, the discrepancies between them where they differ, and we said to you there were but slight differences; the principal difference and perhaps the only difference in the two is with regard to the minimum coal to be mined. You should also consider the fact that one was dated and signed July 1, 1891, and the other was dated July 1, 1891, but signed January 14, 1892. You should consider the testimony given by the witnesses here bearing upon the question of the substitution of the latter for the former, and all of the testimony bearing upon the question as

to what was the understanding of the parties at that time. Is it true or is it not that this latter paper was substituted for the former? You have heard the testimony of the witnesses who were present at the execution of the latter lease. They testify that the two papers were compared at that time and that it was understood then and there between them that this latter paper should take the place of the former. The notice relates to a lease signed July 1, 1891. If, as we said before, it was the intention of the parties that it should refer to this latter lease, then that discrepancy between the language of the notice and the time when the latter lease was signed would be entirely immaterial.] [2] If you should find from the evidence that there was a valid acceptance by Comegys and Davis of the option in the lease under which the plaintiffs in this case claim, that is, under the lease signed January 14, 1892, then such rights as Davenport possessed at that time under his lease with the defendant Russell passed to Comegys and Davis, and in order to protect those rights it was incumbent on them, in case of Davenport's failure to do so, to meet the obligations imposed upon him by his lease with Russell.

On September 23, 1893, Russell declared the forfeiture of the rights which Davenport had acquired under his lease and took possession of the premises. If at the time Russell took possession of the premises, on September 23, 1893, there were royalties unpaid which had been due from Davenport for one year, then as to Davenport his rights under the lease were forfeited and these plaintiffs would have no rights superior to Davenport unless, by some declaration of misconduct of Russell in the premises by which they had been misled to their prejudice, he is estopped from asserting the forfeiture against them. But if Russell knew of the acquisition of Davenport's title in the property by the plaintiffs, if they did acquire that title, and made such positive declarations to them, as they allege here, that no royalties were due from Davenport, and relying upon the truth of such declarations, and by reason thereof, they subsequently made expenditures upon the property to their prejudice, then Russell would be estopped, we think, from denying the truth of those declarations; but if the forfeiture had already accrued at the time of the statements made, their falsity would be no bar to asserting the forfeiture unless the

plaintiffs were subsequently prejudiced thereby. What we mean by that is this, that in order for the declarations made by Russell, if he made any such declarations, to be of any avail in this case for the plaintiffs, it must appear that they were not true and that these plaintiffs, acting upon those declarations, upon the assumption that they were true, expended time or money to their prejudice subsequent to that time.

Plaintiffs' point and the answer thereto among others were as follows:

2. That it is for the jury to find from all the circumstances attending its execution, whether or not Joseph Davenport understood that the paper or lease dated July 1, 1891, but acknowledged January 14, 1892, was the writing under which the plaintiffs elected to proceed. *Answer:* That is affirmed. [3]

Verdict and judgment for plaintiffs. Defendant appealed.

*Errors assigned* were (2, 3) above instructions, quoting them.

*H. M. Hannah* and *S. P. Price*, for appellant.—The construction and interpretation of a written contract is a question of law for the court, and not one of fact for the jury: Cox v. Freedley, 33 Pa. 124; Esser v. Linderman, 71 Pa. 76; Middleton v. Stone, 111 Pa. 589; Foster v. Berg & Co., 104 Pa. 324.

*C. Comegys*, with him *E. H. Shurtleff* and *Everett Warren*, for appellees.

PER CURIAM, April 4, 1898:

When this case was here before it was said, " As against Davenport the plaintiffs may have a good cause of action, but as against Russell, on the evidence as presented in this record, no ground for recovery appears:" Comegys v. Russell, 175 Pa. 166. On this last trial the testimony was somewhat different. There was some evidence from which the jury might find that no royalties were due to support the forfeiture of the lease and the re-entry when made. There was also evidence that the plaintiffs expended time and money on the property upon the faith of the alleged declarations of the defendant that no royalties were due or demandable. This evidence was necessarily for the jury, and their finding, adversely to the defendant, disposes of the case.

The jury were instructed by the learned trial judge that if the plaintiffs were entitled to recover, it must be by virtue of the lease signed January 14, 1892, and not upon the strength of any other lease or paper; and thereupon he submitted to them the question whether or not the notice of acceptance of the lease referred to that instrument. There was considerable evidence on that question, and it was necessarily and properly submitted to the jury for their consideration.

There is nothing else in the case that requires special notice. Neither of the specifications of error is sustained.

Judgment affirmed.